UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                    :

NANCY JACKSON,                           :

                                    :        ORDER

                 Plaintiff,            :

                                    :        11-cv-2925 (WFK) (SMG)

                -against-           :

                                    :

THE CITY OF NEW YORK, P.O. JOHN DAMMACCO, :
SGT. ALEX MONTESQUIEU and P.O. JOHN DOE #1,  :

                                    :

               Defendants.         :

                                    :
------------------------------------------------------------------X

**WILLIAM F. KUNTZ II, United States District Judge**

Nancy Jackson ("Plaintiff") commenced this action against the City of New York, Police Officers John Dammacco and John Doe, and Sergeant Alex Montesquieu (collectively, "Defendants") in connection with an incident where Plaintiff was pulled over while driving and arrested for obstructing governmental administration in the second degree, resisting arrest, reckless driving, harassment in the second degree, and running a red traffic signal light. Plaintiff seeks recovery under 42 U.S.C. §§ 1983, 1985, and 1986 for violation of her rights under the Fourth and Fourteenth Amendments. Plaintiff also asserts pendent state law claims for assault, false arrest, intentional infliction of emotional distress, negligent infliction of emotional distress, and negligent hiring, retention, training, and supervision. This is Plaintiff's second § 1983 action against these Defendants. As they did in Plaintiff's first action, Defendants move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons stated below, Defendants' motion is granted in part and denied in part.

## I.    Factual Background

The parties agree that the causes of action arise from an incident that took place on March

26, 2010 at approximately 4:00 P.M. in Queens, New York. *See* Defs.' 56.1 St., at ¶ 1; Pl.'s 56.1

St., at ¶ 1.[1]  At or near the intersection of North Conduit Avenue and 225th Street, Defendant

Sergeant Alex Montesquieu ("Sergeant Montequieu") stopped Plaintiff's vehicle. *Id.* at ¶ 6.

Sergeant Montesquieu, later joined by Defendant Police Officer John Dammacco ("Officer

Dammacco"), ordered Plaintiff to exit her vehicle, but she refused to comply with his order. *Id.*

at ¶ 8; Dammacco Dep. Tr. at 84:13–19.  Shortly thereafter, additional police officers arrived at

the location and arrested Plaintiff. *Id.* at ¶¶ 9–10.   Following the incident, Officer Dammacco

requested that the New York City Police Department Threat Assessment Unit conduct an

investigation to determine whether Plaintiff posed a risk to him or his family. *Id.* at ¶ 11.

Plaintiff asserts the investigation established that Plaintiff was not a threat and that Officer

Dammacco's suspicions were unfounded, although no evidence in the record reflects the

outcome of this investigation one way or another. *See* Pl.'s 56.1 St., at ¶ 11.

While the parties do not dispute the aforementioned facts, they sharply disagree on the

circumstances giving rise to Plaintiff's traffic stop:

Defendants assert Officer Dammacco first identified Plaintiff from his vehicle, as he was

driving near his home. *Id.* at ¶¶ 2–3.  According to Defendants, Plaintiff was driving a grey

Infinity vehicle, following closely behind Officer Dammacco and switching lanes when he did

(*i.e.*, tailgating). *Id.*; McCann Decl., Ex. C ("Criminal Charge").  Recalling an earlier incident in

---

[1] By citing to the parties' Local Civil Rule 56.1 Statements of Undisputed Facts, the Court incorporates by reference
all relevant sources cited therein.

which he engaged in a physical struggle with Plaintiff,[2] and conscious of Plaintiff's proximity to his home, Officer Dammacco grew concerned for his safety and reported Plaintiff's tailgating to Sergeant Montesquieu, who left the precinct in pursuit of Plaintiff's vehicle. *Id.* at ¶¶ 3–6. Sergeant Montesquieu stated at his deposition that he observed Plaintiff drive straight through a steady red light, at which point he directed her to stop and she complied. *See* Montesquieu Dep. Tr. at 41:22–25, 45:7–46:10.

Plaintiff disputes that she was following Officer Dammacco in a dangerous manner. In support of her position, Plaintiff notes that Officer Dammacco admits Plaintiff did not threaten him while driving and that Officer Dammacco eventually managed to get behind and follow Plaintiff's vehicle. *See* Pl.'s 56.1 St., at ¶ 5 (citing Dammacco Dep. Tr. at 76:25–78:4). Plaintiff also notes that Sergeant Montesquieu was guided to Plaintiff's location by Officer Dammacco, who had been following her. *See id.* at ¶ 6; Dammacco Dep. Tr. at 78:3–4, 81:13–82:25; Montesquieu Dep. Tr. at 41:14–22. Plaintiff asserts that she drove through a red light at Sergeant Montesquieu's direction. *See* Compl. at ¶ 16.

The parties also dispute the circumstances giving rise to Plaintiff's ensuing arrest:

Defendants assert, without detail, that Plaintiff refused to comply with the officers' requests to exit her vehicle. *See* Defs.' 56.1 St., at ¶¶ 7–8. By contrast, Plaintiff asserts that she refused to exit her vehicle out of fear for her safety, after having recognized Officer Dammacco, with whom she had engaged in a prior physical struggle. *See supra* n.2; Pl.'s 56.1 St., at ¶¶ 7, 8. She alleges she called first her lawyer and then 911, from inside her vehicle, to request that

---

[2] On June 3, 2010, Plaintiff initiated a § 1983 action against several New York City Police Officers, including Officer Dammacco and Sergeant Montesquieu, arising from an incident wherein Plaintiff was allegedly falsely arrested and assaulted, and then maliciously prosecuted for various crimes, following an extended struggle between Plaintiff and the officers outside of a pizzeria on Rockaway Boulevard in Queens, New York. *See Jackson v. City of New York*, 10-cv-2530 (E.D.N.Y. June 6, 2010) (Kuntz, J.).

different officers come to the scene. *Id.*; Jackson Dep. Tr. at 174:11–16; *see also* Montesquieu Dep. Tr. at 48:3–25 (testifying that he observed Plaintiff crying and on the phone with the 911 operator when he approached her vehicle). Plaintiff further alleges Sergeant Montesquieu told her she was pulled over, "[b]ecause you're Nancy Jackson," Jackson Dep. Tr. at 171:1–3, 173:14–174:2, before he began cursing and threatening to "[m]ace this bitch," through the open sunroof of Plaintiff's vehicle. Pl.'s 56.1 St., at ¶ 8; Jackson Dep. Tr. at 171:8–21, 172:15–21, 174:11–14. A non-party eyewitness, Pastor Doris Johnson, corroborated Plaintiff's account by sworn affidavit in which she states, "I heard a woman screaming for help," and "I saw a woman in a silver car that was surrounded by three men, two of which were reaching into the vehicle through the sunroof." Aff. of Pastor Doris Johnson ("Johnson Aff."), at ¶ 4. Johnson stated further that she called 911 and yelled for the men to stop. *Id.* at ¶ 5.

The parties agree that Plaintiff eventually exited her vehicle approximately ten minutes after additional officers arrived on the scene, at which point Plaintiff was handcuffed and transported to the hospital. Defs.' 56.1 St., at ¶¶ 9–10; Pl.'s 56.1 St., at ¶ 9; Montesquieu Dep. Tr. at 52:8–14. Plaintiff's criminal charge, prepared by Police Officer James Vogel, includes a statement by Sergeant Montesquieu that Plaintiff "flailed her arms and refused to place her arms behind her back, in order to avoid being handcuffed." McCann Decl., Ex. C. By contrast, Pastor Doris Johnson witnessed Plaintiff "cooperate with the uniformed officers," Johnson Aff. at ¶ 8, and took a photograph consistent with this account.

II.     Discussion

A. Summary Judgment Standard

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

R. Civ. P. 56(a). "The role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried. In determining whether summary judgment is appropriate, this Court will construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (internal citations and quotation marks omitted). No genuine issue of material fact exists "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 212 (2d Cir. 2001) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

If the moving party satisfies this burden, the non-moving party must "make a showing sufficient to establish the existence of [each] element to that party's case . . . since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Chandok v. Klessig*, 632 F.3d 803, 812 (2d Cir. 2011) ("Where the undisputed facts reveal that there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements become immaterial and cannot defeat a motion for summary judgment."). Importantly, if the evidence produced by the non-moving party "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986) (internal citations omitted).

## B. Unlawful Seizure

An individual is seized for purposes of the Fourth Amendment "when the officer, by means of physical force or show of authority, terminates or restrains [her] freedom of movement." *Brendlin v. California*, 551 U.S. 249, 254 (2007) (internal quotation marks

5

omitted). A police officer may stop and briefly detain a person (a "*Terry* stop") if the officer has "a reasonable suspicion supported by articulable facts that criminal activity may be afoot, even if the officer lacks probable cause." *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)) (internal quotation marks omitted). Reasonable suspicion has been defined as something "more than an inchoate and unparticularized suspicion or hunch," but less than probable cause. *Id.* (internal quotation marks omitted).

To determine whether reasonable suspicion exists, the reviewing court must look at the totality of the circumstances, and "must evaluate those circumstances through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training." *United States v. Colon*, 250 F.3d 130, 134 (2d Cir. 2001) (internal quotation marks and citation omitted). In addition, "[i]n evaluating whether an investigative stop is reasonable under the Fourth Amendment, the reviewing court must determine whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Parker v. City of Long Beach*, No. 11-CV-5412, 2013 WL 596624, at *4 (E.D.N.Y. Feb. 15, 2013) (Feuerstein, J.) (quoting *United States v. Alexander*, 907 F.2d 269, 272 (2d Cir. 1990)). "An automobile stop is thus subject to the constitutional imperative that it not be 'unreasonable' under the circumstances. As a general matter, the decision to stop an automobile is reasonable where the police . . . believe that a traffic violation has occurred." *Whren v. United States*, 517 U.S. 806, 810 (1996); *see also United States v. Ferguson*, 130 F. Supp. 2d 560, 564–65 (S.D.N.Y. 2001) (Chin, J.) (noting that "reasonable suspicion to stop and arrest a driver of a vehicle exist[s] '[w]hen an officer observes a traffic offense—however minor.'").

Defendants do not dispute that their initial traffic stop constitutes a temporary detention or seizure, which must be justified by reasonable suspicion, at a minimum. However, Defendants argue that Sergeant Montesquieu was justified in stopping Plaintiff by his reliance on Officer Dammacco's report, which described Plaintiff tailgating Officer Dammacco's vehicle in a location near his home. *See* Defs.' Br. at 5–6.

Although "[a] police officer is entitled to rely on the contents of a fellow officer's radio report and to presume that a statement alleging criminality is justified by probable cause," *Micalizzi v. Ciamarra*, 206 F. Supp. 2d 564, 577 (S.D.N.Y. 2002) (McMahon, J.), this reliance, commonly referred to as the "fellow officer" rule, does not apply on these facts. The New York Court of Appeals has held that an officer is entitled to rely on a fellow officer's report only when the reporting officer "has the requisite probable cause." *People v. Rosario*, 78 N.Y.2d 583, 588, 578 N.E.2d 766 (N.Y. 1991). If the arrest is challenged for lack of probable cause, as is the case here, then the police bear the burden of establishing that the reporting officer had probable cause prior to issuing the relied-upon radio report. *Id.* This analysis has been adopted by the Second Circuit in holding that reliance on information from a 911 dispatcher did not create reasonable suspicion to justify the arresting officer's actions in conducting a *Terry* stop. *Colon*, 250 F.3d at 137.

In this case, a genuine issue of material fact precludes the Court from finding that Officer Dammacco had probable cause or reasonable suspicion to report Plaintiff for harassment and reckless driving. Plaintiff disputes that she was ever tailgating Officer Dammacco's vehicle. *See* Pl.'s 56.1 St., at ¶¶ 2, 5. If Plaintiff was not following Officer Dammacco's vehicle in a dangerous manner, then Officer Dammacco could not have had probable cause to report her for harassment or reckless driving, as those violations require, *inter alia*, "with intent to harass,

7

annoy or alarm . . . follow[ing] a person in or about a public place" or "driving . . . in a manner which unreasonably interferes with free and proper use of the public highway." N.Y. Pen. Law § 240.26(2); N.Y. Veh. & Traf. Law § 1212. Because the Court must credit Plaintiff's version of events on this motion, *see Brod*, 653 F.3d at 164, the Court cannot conclude as a matter of law that Officer Dammacco acted with probable cause.

Accordingly, Sergeant Dammacco was not entitled to rely on Officer Dammacco's report. Moreover, the record is undisputed that during at least part of the reported incident Officer Dammacco was in fact following Plaintiff—not the other way around. *See* Dammacco Dep. Tr. at 76:25–78:4, 81:13–82:24; Montesquieu Dep. Tr. at 81:22–82:9. Therefore, Sergeant Montesquieu's own observations did not corroborate the description reported by Officer Dammacco. Because Defendants have not articulated any other information sufficient to justify stopping Plaintiff's vehicle,[3] Defendants are not entitled to summary judgment on Plaintiff's claim for unlawful seizure.

Defendants separately argue that Officer Dammacco did not conduct the traffic stop and therefore cannot be held liable. *See* Defs.' Br. at 5. However, Defendants simultaneously argue that the stop was *entirely* justified by Officer Dammacco's report to Sergeant Montesquieu and that Sergeant Montesquieu was directed to Plaintiff's vehicle by Officer Dammacco, who was following behind Plaintiff's vehicle. *See* Defs.' 56.1 St., at ¶¶ 3–6; Dammacco Dep. Tr. at 76:25–78:4, 81:13–82:25; Montesquieu Dep. Tr. at 41:14–22. Based on Defendants' own

---

[3] Although Sergeant Montesquieu testified that he observed Plaintiff run a red light, *see* Montesquieu Dep. Tr. at 41:22–25, 45:7–18, Defendants do not argue that this observation provided Sergeant Montesquieu with reasonable suspicion or probable cause sufficient to stop and detain Plaintiff. Moreover, Plaintiff disputes that she ran a red light voluntarily. *See* Compl. at ¶ 16. Even if Defendants had argued this point, a genuine dispute of fact would preclude this Court from concluding that Sergeant Montesquieu acted with reasonable suspicion in stopping Plaintiff. In other words, Plaintiff's involuntary act of running a red light while being stopped could not have created reasonable suspicion to stop her.

admissions, the Court concludes that disputed issues of fact preclude the Court from concluding

Officer Dammacco was not involved in Plaintiff's detention. *See, e.g., Carin v. City of New*

*York*, No. 95 Civ. 3472, 1998 WL 60952, at *3 (S.D.N.Y. Feb. 13, 1998) (Keenan, J.) (holding

that "[a]lthough [police officer] did not physically take custody of plaintiff . . . a genuine issue of

material fact exists as to whether [the officer's] ride in the van [with plaintiff] . . . constitutes

participation in the arrest."); *Mack v. Town of Wallkill*, 253 F. Supp. 2d 552, 558–59 (S.D.N.Y.

2003) (McMahon, J.) (non-arresting officer directly involved in the arrest of plaintiff could be

liable for false arrest). Accordingly, Defendants' motion for summary judgment on Plaintiff's

claim for unlawful seizure is denied as to both Sergeant Montesquieu and Officer Dammacco.

## C. False Arrest

Defendants move for summary judgment on Plaintiff's allegation that she was falsely

imprisoned and falsely arrested in violation of both federal and state law. A § 1983 claim for

false arrest sounding in the Fourth Amendment is "substantially the same" as a claim for false

arrest under New York law. *Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003) (quoting

*Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)). Under New York law, the torts of false arrest

and false imprisonment are "synonymous." *Posr v. Doherty*, 944 F.2d 91, 96 (2d Cir. 1991).

"To establish a claim under § 1983 for false arrest a plaintiff must show that: (1) the defendant

intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the

plaintiff did not consent to the confinement; and (4) the confinement was not otherwise

privileged." *Carson v. Lewis*, 35 F. Supp. 2d 250, 257 (E.D.N.Y. 1999) (Seybert, J.) (citing

*Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995)). The existence of probable cause

is a complete defense to a § 1983 claim for false arrest. *Weyant*, 101 F.3d at 852; *Singer*, 63

F.3d at 118.

A police officer has probable cause to arrest when he has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Weyant*, 101 F.3 at 852. The validity of an arrest does not depend upon a finding that the arrested person is guilty. *Pierson v. Ray*, 386 U.S. 547, 555 (1967). Rather, a determination of the existence of probable cause "turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time." *Maryland v. Macon*, 472 U.S. 463, 470 (1985) (internal citation omitted). The existence of probable cause may be determined as a matter of law provided there is no factual dispute regarding the pertinent events and the knowledge of the officers. *See, e.g., Singer*, 63 F.3d at 118–19 (affirming dismissal of false arrest claim on the ground that the facts supporting store owner's complaint of theft established probable cause).

Defendants argue they were justified in arresting Plaintiff on two grounds. First, Defendants argue Plaintiff's refusal to comply with Defendants' orders to exit her vehicle constitutes an element of obstructing government administration under N.Y. Pen. Law § 195.05. *See* Defs.' Br. at 8. However, the cases Defendants cite in support of this position are clearly distinguishable. In both of them, the relevant unheeded police order was justified by a separate unlawful act. For example, in *Wilder v. Vill. Of Amityville*, the plaintiff was ordered to move from a location where she was obstructing lawful removal of a tree. 288 F. Supp. 2d 341, 344 (E.D.N.Y. 2003) (Platt, J.). Her failure to obey defendant police officers' orders obstructed designated municipal workers from completing a lawful task. *Id.* Similarly, in *Johnson v. City of New York*, the plaintiff disobeyed orders to open a door and permit police officers to enter, where the police had probable cause to arrest, and were attempting to arrest, the plaintiff for

10

harassment after receiving reports of screaming and witnessing a possible victim with cuts on her arms. 05 Civ. 7519, 2008 WL 4450270, at *8, 13 (S.D.N.Y. Sept. 29, 2008) (Castel, J.). This, the Court held, gave the officers probable cause to arrest for obstruction of governmental administration. *Id.* at *10. In addition, the cases cited by *Wilder* and *Johnson* are limited to circumstances where the police had probable cause to issue the respective disobeyed orders in the first place. S*ee Lennon v. Miller*, 66 F.3d 416, 419, 424 (2d Cir. 1995) (upholding arrest for obstructing governmental administration where plaintiff disobeyed orders to exit a vehicle that police officers had probable cause to believe had been stolen); *Berger v. Schmitt*, No. 02-CV-0155E, 2003 WL 21383007, at *2–3 (W.D.N.Y. Apr. 18, 2003) (Elfvin, J.) (upholding arrest for obstructing governmental administration where plaintiff disobeyed orders to vacate premises where he was trespassing); *see also Ostroski v. Town of Southold*, 443 F. Supp. 2d 325, 338–39 (E.D.N.Y. 2006) (Bianco, J.) (upholding arrest for obstructing governmental administration where plaintiff was convicted of harassment and criminal mischief based on the same conduct).

Defendants fail to cite any cases where probable cause to arrest for obstructing government administration can be predicated solely on failure to comply with a police order. Here, Plaintiff was not obstructing government administration by her failure to exit her vehicle. True, "once a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment." *Arizona v. Johnson*, 555 U.S. 323, 324 (2009) (internal citations omitted). However, the Court is unaware of any cases that hold refusal to exit a vehicle, without more, amounts to probable cause. *See Smith v. City of New Haven*, 166 F. Supp. 2d 636, 644 (D. Conn. 2001) (Burns, J.) (police officers were entitled to qualified immunity against plaintiff's claim of false arrest where plaintiff refused to shut off car engine, moved car without permission, refused to exit vehicle,

*and* refused to cooperate in entering police vehicle). Moreover, under Plaintiff's version of the facts, the Court has already concluded Defendants lacked probable cause to arrest Plaintiff based on their reliance on Officer Dammacco's report. Construing the facts in the light most favorable to Plaintiff, Plaintiff's vehicle was not lawfully detained because Plaintiff had not committed any traffic violation. Therefore, Plaintiff's failure to comply with an (unjustified) order to exit her vehicle cannot, without more, create the predicate probable cause to justify her arrest for obstruction of governmental administration.

Second, Defendants argue they were justified in arresting Plaintiff by their reliance on Officer Dammacco's initial report. *See* Defs.' Br. at 9. The Court has already concluded Defendants were not justified in relying on Officer Dammacco's report about Plaintiff's actions when they initially detained Plaintiff. For the reasons discussed *supra*, this argument also fails to justify Plaintiff's arrest.

The Court also notes that although Officer Vogel is the arresting officer of record, *see* McCann Decl., Exs. C, D, both Sergeant Montesquieu and Officer Dammacco were indisputably involved in the incident leading up to Plaintiff's arrest. Accordingly, the Court denies Defendants' motion for summary judgment on Plaintiff's claims for false arrest under federal and state law against all named Defendants.

### D. Excessive Force and Battery

Excessive force claims brought under Section 1983 are "judged under the Fourth Amendment's 'objective reasonableness' standard." *Terranova v. New York*, 676 F.3d 305, 308 (2d Cir. 2012) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 197 (2004)). "The same is true for claims of . . . battery brought under New York law." *Gilliard v. City of New York*, No. 10-CV-

5187, 2013 WL 521529, at *10 (E.D.N.Y. Feb. 11, 2013) (Garaufis, J.) (citing *Kramer v. City of New York*, No. 04–CV–106, 2004 WL 2429811, at *11 (S.D.N.Y. Nov. 1, 2004) (Baer, J.)). Under New York law, a "battery" is defined as "an intentional wrongful physical contact with another person without consent." *United Nat. Ins. Co. v. Waterfront New York Realty Corp.*, 994 F.2d 105, 108 (2d Cir. 1993) (collecting authorities).

To succeed on a claim for excessive force, a plaintiff must present sufficient evidence to establish that "the alleged use of force is 'objectively sufficiently serious or harmful enough' to be actionable." *Cunningham v. Rodriguez*, No. 01 Civ. 1123, 2002 WL 31654960, at *4 (S.D.N.Y. Nov. 22, 2002) (Chin, J). "[T]he Second Circuit and district courts in the Circuit recognize the concept of '*de minimis*' injury and, when the injury resulting from alleged excessive force falls into that category, the excessive force claim is dismissed." *Lemmo v. McKoy*, No. 08-CV4264, 2011 WL 843974, at *5 (E.D.N.Y. Mar. 8, 2011) (Dearie, J.). "Injuries held to be *de minimis* for purposes of defeating excessive force claims include short-term pain, swelling, and bruising, brief numbness from tight handcuffing, claims of minor discomfort from tight handcuffing, and two superficial scratches from a cut inside the mouth." *Id.* (citations omitted).

In this case, it is undisputed that Defendants did not make any physical contact with Plaintiff and Plaintiff did not sustain any, even *de minimis*, injuries. *See* Defs.' Br. at 10. Accordingly, Defendants are entitled to summary judgment on Plaintiff's claims for excessive force and battery and those claims are dismissed with prejudice.

### E. Deliberate Indifference

To prevail on a constitutional claim of deliberate indifference to medical needs, a plaintiff must prove that she suffered from an objectively serious medical condition, which the defendants knew of and deliberately disregarded. *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998). Plaintiff does not allege she suffered from any medical condition, much less an objectively serious medical condition. As such, there is no genuine issue of fact tending to support Plaintiff's claim of deliberate indifference to her medical needs. Defendants are entitled to summary judgment with respect to this claim.

### F. Failure to Intervene

"A law enforcement officer has an affirmative duty to intercede on behalf of a citizen whose constitutional rights are being violated in his presence by other officers." *O'Neill v. Krzeminski*, 839 F.2d 9, 11 (2d Cir. 1988). An officer may be held liable for preventable harm caused by the actions of other officers, if "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008) (Marrero, J.).

The Court has already concluded *supra* that Officer Dammacco and Sergeant Montesquieu both may be held liable under a theory of direct participation, therefore neither would be held liable for failure to intervene. *See, e.g., Chepilko v. City of New York*, No. 06-CV-5491, 2012 WL 398700, at *8 n.5 (E.D.N.Y. Feb. 6, 2012) (Ross, J.). However, because a genuine issue of material fact exists as to the extent of each defendant police officer's

participation in Plaintiff's arrest, which was officially executed by Officer Vogel, Defendants are

not entitled to summary judgment on Plaintiff's claim for failure to intervene. *See Dawkins v.*

*Williams*, 413 F. Supp. 2d 161, 172 ("[E]ven if an officer is not directly involved in an arrest,

they may still be liable under § 1983 for their failure to intervene.").

### G. Qualified Immunity

"The doctrine of qualified immunity shields public officials performing discretionary

functions from civil liability insofar as their conduct does not violate clearly established statutory or

constitutional rights . . . or insofar as it was objectively reasonable for them to believe that their acts

did not violate those rights." *Bradway v. Gonzales*, 26 F.3d 313, 317–18 (2d Cir. 1994) (internal

quotation marks and citations omitted). "[A]n arresting officer is entitled to qualified immunity on

claims of false arrest and malicious prosecution if either: (a) it was objectively reasonable for the

officer to believe that probable cause existed, or (b) officers of reasonable competence could

disagree on whether the probable cause test was met." *Carthew v. Cnty. of Suffolk*, 709 F. Supp. 2d

188, 203 (E.D.N.Y. 2010) (Bianco, J.) (citing *Walczyk v. Rio*, 496 F.3d 139, 163 (2d Cir. 2007);

*Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 416 (2d Cir. 1999)).

The Second Circuit has defined the latter standard, commonly referred to as "arguable

probable cause," as follows:

> Arguable probable cause exists when a reasonable police officer in the same
> circumstances and possessing the same knowledge as the officer in question
> *could* have reasonably believed that probable cause existed in the light of well
> established law. It is inevitable that law enforcement officials will in some
> cases reasonably but mistakenly conclude that probable cause is present, and
> we have indicated that in such cases those officials—like other officials who
> act in ways they reasonably believe to be lawful—should not be held
> personally liable.

*Cerrone v. Brown*, 246 F.3d 194, 202–03 (2d Cir. 2001) (quotation marks and internal citations omitted) (emphasis in original). Moreover, under this standard, "an 'arresting officer is entitled to qualified immunity as a matter of law if the *undisputed facts* and all permissible inferences favorable to the plaintiff show that officers of reasonable competence could disagree on whether the probable cause test was met.'" *McClellan v. Smith*, 439 F.3d 137, 147–48 (2d Cir. 2006) (quoting *Robison v. Via*, 821 F.2d 913, 921 (2d Cir. 1987)) (internal editing omitted) (emphasis in the original).

In establishing whether arguable probable cause existed, officers are "entitled to draw reasonable inferences from the facts they possess at the time of a seizure based upon their own experiences." *Cerrone*, 246 F.3d at 203 (citing *Ornelas v. United States*, 517 U.S. 690, 699 (1996)). "This forgiving standard protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Provost v. City of Newburgh*, 262 F.3d 146, 160 (2d Cir. 2001) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Only where an officer's "judgment was so flawed that no reasonable officer would have made a similar choice," is the denial of qualified immunity appropriate. *Id.* In the end, "qualified immunity protects government officials when they make 'reasonable mistakes' about the legality of their actions." *Doninger v. Niehoff*, 642 F.3d 334, 353 (2d Cir. 2011) (quoting *Saucier v. Katz*, 533 U.S. 194, 206 (2001)).

Viewing the facts in the light most favorable to Plaintiff, the Court concludes that Defendants' mistakes were not reasonable. Under Plaintiff's version of the facts, Plaintiff had not committed any unlawful actions prior to being reported by Officer Dammacco and, once reported and stopped, Plaintiff's refusal to exit her vehicle did not create probable cause to justify her arrest. No reasonable officer would have believed he was justified in stopping—not to mention arresting— Plaintiff, absent any unlawful behavior. Defendants argue they are entitled to qualified immunity "given Plaintiff's erratic behavior," *see* Defs.' Br. at 13, but they fail to specify what this erratic

behavior was. Moreover, Pastor Doris Johnson's sworn affidavit and accompanying photographs describe Defendants reaching in through Plaintiff's sunroof, causing her to scream for help. *See* Johnson Aff. at ¶¶ 4, 5, 9. Based on the undisputed facts and drawing all permissible inferences in Plaintiff's favor, *see McClellan*, 439 F.3d at 147–48, this Court concludes that reasonable officers could not disagree that probable cause test was not met. Accordingly, Defendants are not entitled to qualified immunity against Plaintiff's surviving causes of action.

### H. Assault

Under New York law, an "assault" is "an intentional placing of another person in fear of imminent harmful or offensive contact." *United Nat'l Ins. Co.*, 994 F.2d at 108. As is true for state law claims of battery, claims of assault "are judged under the Fourth Amendment's objective reasonableness standard." *Gilliard*, 2013 WL 521529, at *10 (internal citation and quotation marks omitted).

In support of their motion, Defendants argue Plaintiff fails to present evidence that Defendant officers placed her in fear of imminent harmful or offensive contact. Defs.' Br. at 15. This assertion is clearly false: Plaintiff testified in detail that Sergeant Montesquieu pointed mace toward her face through an open sunroof and threatened to "[m]ace this bitch." Jackson Dep. Tr. at 171:8–21, 172:15–21. Moreover, this assertion is partially corroborated by Pastor Doris Johnson's observations. *See generally* Johnson Aff. Taken in the light most favorable to Plaintiff, the facts alleged support Plaintiff's claim that Defendants' aggressive actions inspired a reasonable apprehension of offensive contact. Moreover, having already concluded *supra* that material issues of fact preclude this Court from determining the defendant officers acted with reasonable suspicion or probable cause, this Court denies Defendants' motion for summary judgment on the separate ground that Plaintiff's arrest was not lawful as a matter of law. *See,*

17

*e.g., Kirk v. Metro. Transp. Auth.*, No. 99 CIV 3787, 2001 WL 258605, at *10 (S.D.N.Y. Mar. 14, 2010) (Sweet, J.) (denying summary judgment on plaintiff's claim of state law assault where disputed material facts precluded the Court from determining the existence of probable cause for arrest). Were a jury to find Defendants liable for false arrest and unreasonable seizure, no amount of force by Defendants could be considered reasonable. *See Black v. Town of Harrison*, No. 02 Civ.2097, 2002 WL 31002824, at *5–6 (S.D.N.Y. Sept. 5, 2002) (Sweet, J.).

## I. Intentional and Negligent Infliction of Emotional Distress

"Under New York law, the torts of intentional and negligent infliction of emotional distress share three common elements: (1) extreme and outrageous conduct, (2) a causal connection between the conduct and the injury, and (3) severe emotional distress." *Simpson ex rel. Simpson v. Uniondale Free Sch. Dist.*, 702 F. Supp. 2d 122, 134 (E.D.N.Y. 2010) (Seybert, J.). In addition, the Court notes that "the circumstances under which recovery may be had for purely emotional harm are extremely limited." *Id.* at 135 (internal quotation marks omitted); *see also Rasmussen v. City of New York*, 766 F. Supp. 2d 399, 415 (E.D.N.Y. 2011) (Cogan, J.) (characterizing an intentional infliction claim as a "gap-filling cause of action meant to address those few areas of outrageous anti-social behavior not addressed under any other cause of action").

In this case, Plaintiff fails to establish any "severe emotional distress," as required to show either intentional or negligent infliction of emotional distress. Apart from bare and conclusory assertions that she suffered "psychological and emotional trauma," and "mental . . . injuries," *see* Compl. at ¶¶ 34, 55, 56, Plaintiff has not introduced any evidence tending to show she suffered any emotional distress. Therefore, Defendants' motion for summary judgment is

granted as to these two claims and the claims are dismissed with prejudice. *See, e.g., Lapsley v. Columbia University-College of Physicians and Surgeons*, 999 F. Supp. 506, 526 (S.D.N.Y. 1998) (Chin, J.) (conclusory allegations do not create a question of fact sufficient to defeat summary judgment on a claim for intentional infliction of emotional distress under New York law).

### J. Negligent Hiring, Training, Retention, and Supervision

"To prevail on a claim for negligent hiring, training, supervision, or retention, a plaintiff must prove that a municipality's failure to properly train, hire, retain, or supervise its police officers in a relevant respect evidences a deliberate indifference to the rights of its inhabitants." *Henry-Lee v. City of New York*, 746 F. Supp. 2d 546, 566 (S.D.N.Y. 2010) (Chin, J.) (quoting *Jackson v. City of New York*, 192 A.D.2d 641, 596 N.Y.S.2d 457, 458 (N.Y. App. Div. 2d Dep't 1993) (internal quotation marks omitted); *see also City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989) (holding inadequacy of police training may serve as basis for § 1983 liability only where failure to train amounts to deliberate indifference to rights of persons with whom police come in contact). "On a motion for summary judgment, the plaintiff bears the burden of presenting evidence pertaining to the training, hiring, retention, or supervision policies of the municipalities." *Henry-Lee*, 746 F. Supp. 2d at 566.

Plaintiff "has not submitted any evidence of the City's hiring, training, supervision or retention policies generally or as applied to the defendant officers." *Tsesarskaya v. City of New York*, 843 F. Supp. 2d 446, 464 (S.D.N.Y. 2012) (Peck. M.J.). Plaintiff argues in a single paragraph that "[t]he egregious nature of the offenses against plaintiff's rights and the disregard [of] the most basic . . . procedure are in themselves proof the defendants were not trained

properly." Pl.'s Br. at 15. Plaintiff does not cite, nor is the Court aware of, any authority in support of this argument. *See, e.g., Turpin v. Mailet*, 619 F.2d 196, 202–03 (2d Cir. 1980) (reversing finding of negligent training and supervision against city police department for lack of evidence of an official policy, in a case where appellant was falsely arrested twice). Moreover, the record is insufficient to permit a reasonable jury to conclude that the City of New York negligently retained officers in deliberate indifference to the rights of its inhabitants. *Henry-Lee*, 746 F. Supp. 2d at 566. Summary judgment is appropriate where there is no proof that the employer acted negligently in hiring, training, supervising or retaining its employees. *Tsesarskaya*, 843 F. Supp. 2d at 464.

Therefore, Defendants are entitled to summary judgment against Plaintiff's claim for negligent hiring, training, supervision, and retention and that claim is dismissed with prejudice.

## III.    Conclusion

For the reasons discussed above, Defendants' motion for summary judgment is granted in part and denied in part. Defendants' motion is denied as to, and Defendants are not entitled to qualified immunity against, Plaintiff's claims for unlawful seizure and false arrest, and for failure to intervene in those constitutional violations. Defendants' motion is also denied as to Plaintiff's claim for assault. Defendants' motion is granted as to Plaintiff's claims for excessive force; battery; negligent and intentional infliction of emotional distress; and negligent hiring, training, retention and supervision. The latter claims are dismissed with prejudice.

**SO ORDERED**

Dated:    Brooklyn, New York
       April 16, 2013

s/WFK

HON. WILLIAM F. KUNTZ, II
United States District Judge

20